UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CARRI MARIE CARROLL, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 4:09-CV-2381-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Carri Marie Carroll, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB").    Ms. Carroll timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Carroll was thirty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education.  (Tr.

at 131, 137, 146.)  Her past work experience includes employment as a cook and a wired harness assembler.  *Id*.  Ms. Carroll claims that she became disabled on August 9, 2002, due to bipolar disorder, schizoaffective disorder, and neck injury.  (Tr. at 108, 126, 130.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.   (*Id.*)   If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.   *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*

Applying the sequential evaluation process, the ALJ found that Ms.

Carroll "last met the insured status requirements of the Social Security Act on December 31, 2007." (Tr. at 16.)  He further determined that Ms. Carroll had not engaged in substantial gainful activity since the alleged onset of her disability through December 31, 2007, her date last insured.  *Id*.  According to the ALJ, Plaintiff's bipolar disorder and anxiety disorder are considered "severe" based on the requirements set forth in the regulations.  *Id*.  However, he found that Plaintiff does not have an impairment or combination of impairments that either met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id*. at 17.  The ALJ determined that Ms. Carroll has the residual functional capacity to

> perform a range of 'medium work' as that term is otherwise defined in 20 CFR 404.156(c).  Specifically, the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently.  She can stand or walk about 6 hours and can sit about 6 hours out of an 8-hour workday.   She can operate foot controls only occasionally.  She can frequently balance, crouch, and climb ramps and stairs, but is unable to climb ropes, ladders, or scaffolding.  She can occasionally stoop and kneel, but is unable to crawl.  She should avoid concentrated exposure to workplace hazards such as unprotected heights, bodies of water, and dangerous moving machinery.  Furthermore, the claimant is able to understand, remember, and carry out simple, routine instructions, but not complex instructions.  She can maintain focus and concentration for 2-hour periods with normal work breaks.  She is able to respond appropriately to co-workers and

supervisors, but should have no more than infrequent, non-intensive contact with the general public.  The claimant is otherwise able to adapt satisfactorily to changes in the work setting.  The claimant also suffers from pain of a mild to moderate intensity.

*Id*. at 18.

The ALJ then determined that, through the date last insured, Plaintiff "was unable to perform any past relevant work."  (Tr. at 23.)  Through the date last insured, based on Plaintiff's age, education, work experience, and RFC, the ALJ found jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  These jobs include: work as a hand packager (1,200 in the state; 162,000 nationally); a marker (520 in the state; 163,000 nationally); and an eye glass frame polisher (1,400 in the state; 100,000 nationally).  *Id*. at 24-25.  Accordingly, the ALJ entered a finding that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from August 9, 2002, the alleged onset date, through December 31, 2007, the date last insured."  *Id*. at 25.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security

Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Carroll alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for three reasons.  (Doc. 9 at 2-22.)  First, Plaintiff claims the "decision is not supported by substantial evidence and the finding that [Plaintiff] has capacity to perform medium work is not supported by substantial evidence." *Id*. at 2.  Second, Plaintiff contends "the ALJ failed to accord proper weight to the treating physician and failed to state specific reasons for rejecting the treating physician's opinion and the ALJ substituted his opinion for the opinion of the treating physician." *Id*.  Finally, Plaintiff alleges "the finding that [Plaintiff] is not credible is not supported by substantial evidence or sufficient reasons." *Id*.

A.     RFC.

Plaintiff contends that the ALJ's decision that Plaintiff can perform medium work is not based on substantial evidence.   (Doc. 9 at 9.)   An individual's RFC is an example of an issue that is administrative in nature, not a medical issue.   Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5.   According to Soc. Sec. Rul. 96-8p, "[t]he RFC assessment must always consider and address medical source opinions.   If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."   1996 WL 374184 (S.S.A.).   His decision must be based not only upon the medical evidence, but upon all evidence in the record.   *Id*.   Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). RFC.   Finally, the mere diagnosis of an impairment does not determine

disability.  The functional limitations imposed by the condition upon the ability to work are what determine disability.  *Id*. at 1213 n.6.

In the instant case, the ALJ clearly included limitations in the RFC that resulted from Plaintiff's bipolar disorder and anxiety.  The ALJ limited Plaintiff to simple, routine instructions, but not complex instructions; focus and concentration for 2-hour periods with normal work breaks; and, although able to respond appropriately to co-workers and supervisors, she should have no more than infrequent, non-intensive contact with the general public.  (Tr. at 18.)  These limitations are based on the medical evidence[1] and clearly encompass Plaintiff's mental impairments.

Plaintiff contends that the ALJ did not properly include any emotional or mental impairments or limitations in the hypothetical questions he posed to the Vocational Expert ("VE").  However, the ALJ included the limitations noted above in the hypothetical questions and the VE determined Plaintiff could perform her past relevant work.  (Tr. at 57.)  The ALJ then asked the VE to consider the physical limitations included in the RFC and the VE determined Plaintiff would not be able to perform her past work as a cook.

---

[1] *See infra*, pp. 13-17.

Finally, the ALJ asked the VE to determine if jobs existed which Plaintiff could perform if Plaintiff's mental and physical limitations were taken into account, but all of Plaintiff's past work was precluded.  The VE found there were other jobs which Plaintiff could perform, including a hand packager, marker, and eye glass frame polisher.  *Id*. at 57-59.  Based on the VE's responses, the ALJ properly concluded Plaintiff could perform other work in the national economy.  *Id*. at 24.

The VE's responses were based on hypothetical questions, which included Plaintiff's functional limitations as determined by the ALJ.  These limitations were based on the medical evidence of record.  Thus, the ALJ had substantial evidence with which to determine Plaintiff's ability to work.

Plaintiff further argues that the ALJ "did not rely on the answers to the VE because the ALJ held that [Plaintiff] could not perform her past work."  (Doc. 9 at 11.)  This argument is without merit.  The ALJ posed a hypothetical to the VE, asking him to preclude Plaintiff's past work.  In response, the VE listed other jobs Plaintiff was capable of performing, and the ALJ relied upon this testimony.  Further, while the ALJ did determine Plaintiff could not perform her past work, if he had found Plaintiff could

perform her past work, then that too would lead to a finding that Plaintiff is not disabled.   Thus, based on substantial evidence, the ALJ properly determined that Plaintiff is capable of performing medium work.

B.   Treating Physician Testimony.

The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary."   *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).   The weight afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon: the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.   *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).   Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a claimant's RFC. *See e.g.*, 20 C.F.R. § 404.1546(c).

Plaintiff alleges the ALJ failed to accord proper weight to her treating physician, Dr. Farrukh Jamil, and failed to state specific reasons for rejecting Dr. Jamil's opinion. (Doc. 9 at 12.) However, this is simply not

the case.  In determining Plaintiff is not disabled, the ALJ considered not only Dr. Jamil's opinion, but all the other medical evidence of record as well, and, in doing so, determined Dr. Jamil's opinion was entitled to "little weight."  (Tr. at 22.)

Based on the record, Dr. Jamil first examined Plaintiff on January 17, 2008.  (Tr. at 20, 308-14.)  At that time, Dr. Jamil noted Plaintiff was fully oriented in all spheres, admitted to feelings of guilt but other thought content was normal, she had fair insight and judgment, and while she seemed restless and had difficulty concentrating, her memory was good.  His assessment was that Plaintiff had bipolar disorder.  *Id*.  When Plaintiff returned to Dr. Jamil in March 2008, he noted that because she was breast feeding, he had not started Plaintiff on prescribed medication for her bipolar disorder.  At that time, Dr. Jamil rated Plaintiff's GAF at 60.  Plaintiff returned to Dr. Jamil once again on May 20, 2008, and reported continued mood swings, but she was still breast feeding, and therefore had not started using her prescribed medication.  Her GAF on that occasion was noted to be at 58.  *Id*.

Then, on a June 2008 questionnaire prepared by Plaintiff's counsel,

Dr. Jamil opined that Plaintiff had been disabled since October 23, 2007, and was disabled "indefinitely" due to her bipolar disorder.  Dr. Jamil continued that her mood swings, poor concentration and irritability left her "unable to adequately function in a work environment." *Id*. at 20-21,  306. Not only is this opinion inconsistent with Dr. Jamil's own records noted above, particularly the GAF scores which he previously assigned Plaintiff, the ALJ noted that the record did not indicate any "objective psychological testing or reference to such." *Id*. at 22.  Further, Dr. Jamil stated that the onset of Plaintiff's disability was October 23, 2007, yet there is no record of Plaintiff being treated by Dr. Jamil prior to January 17, 2008. *Id*. at 20-22, 306.

In addition to the inconsistencies within Dr. Jamil's own records, the ALJ noted the inconsistencies between Dr. Jamil's records and the records of Plaintiff's other physicians.  In November 2005, Plaintiff was referred to Dr. A. Bartow Ray, a psychologist, due to a motor vehicle accident.  (Tr. at 19, 346-63.)  Dr. Ray noted symptoms of depression and anxiety.  He found that Plaintiff's flow of thought was primarily normal, but she did suffer from an inability to concentrate from time to time.  He also determined that her

fund of information was adequate and that her judgment and insight were fair to good, with average intelligence.  *Id*. at 351.  Dr. Ray diagnosed Plaintiff with bipolar disorder and posttraumatic stress disorder.  He estimated Plaintiff's GAF to be at 60, although he noted that her GAF had been as high as 90 during the preceding year.  *Id*. at 19,  353-54.  Plaintiff saw Dr. Ray again on January 2006 for assessment and therapy.  Although Plaintiff reported severe mood swings and nausea, Dr. Ray reported that Plaintiff had "become less than cooperative with her treatment."  *Id*. at 20, 363.  He scheduled Plaintiff for a follow-up therapy but Plaintiff did not return to Dr. Ray.  *Id*.  However, on January 16, 2007, Dr. Ray opined that Plaintiff was not disabled and that "she was non-compliant with treatment due to being immature and willful."  *Id*. at 20, 284.

On February 14, 2007, Dr. Jack Bentley performed a consultative psychological evaluation of Plaintiff, who was six months pregnant at the time.  (Tr. at 20, 285-88.)  Plaintiff reported increasingly severe mood swings, crying spells, periodic rage over minor events, and she denied suicidal ideation, hallucinations, and bizarre mentation.  Dr. Bentley noted Plaintiff's mental status examination as uneventful.  He further noted that

her memory was satisfactory, she had no impairment in receptive or expressive communication skills, she made good eye contact, was cheerful with a congruent affect, was alert and oriented, and, although mildly anxious at first, she relaxed as the interview progressed. *Id*. at 20, 285-87. Dr. Bentley determined Plaintiff's intelligence was in the average range and diagnosed her with bipolar disorder and nicotine dependence. He further gave her a favorable prognosis and noted that Plaintiff had discontinued her psychiatric medications due to pregnancy. *Id*. at 20, 288.

Because Dr. Bentley's opinion was based upon direct observation and examination of Plaintiff, he had the opportunity to review Plaintiff's entire medical/psychological history, and his opinion was "internally consistent as well as consistent with the evidence as a whole," the ALJ afforded his opinion "substantial weight." *Id*. at 23. The ALJ also gave "strong weight" to Dr. Ray's opinion, "inasmuch as it coincides with the findings of Dr. Bentley that [Plaintiff] has bipolar disorder, but is not so severely affected as to be disabled by it." *Id*.

Finally, the ALJ gave "significant, but not full weight" to the opinion of Dr. Robert Estock, the state agency psychological advisor. (Tr. at 22,

291-303.)  The ALJ found this opinion to be consistent with the evidence as a whole, particularly with regard to Plaintiff's RFC.   However, the ALJ determined that Dr. Estock's conclusion that Plaintiff had only a non-severe psychological impairment was inconsistent with the "lengthy, if somewhat intermittent treatment and diagnoses from medical sources, which militate in favor of finding a severe impairment in this area."  *Id*. at 22-23.

Based on the medical evidence of record as discussed above, the ALJ was correct in attributing little weight to the opinion of Dr. Jamil.

C.     Credibility.

Plaintiff claims the ALJ "failed to state adequate reasons for finding [Plaintiff] not credible and the ALJ substituted his opinion for the opinion of the treating physician."  (Doc. 9 at 17.)  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a

whole." *Id.* (internal quotations omitted).

In the present case, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. at 19.)

Although Plaintiff contends that the ALJ did not address why Plaintiff's testimony concerning her bipolar disorder and anxiety were not credible, despite their severity being supported by a treating physician (Doc. 9 at 20), the ALJ did discuss these impairments and gave sufficient reasons for determining Plaintiff's testimony was not credible.  The ALJ first discussed Plaintiff's testimony.  (Tr. at 18.)  Plaintiff completed disability forms in which she stated that she was able to do the following: daily household chores (cleaning, laundry, dishes), although sometimes they "overwhelmed" her; pick her daughter up from school each day; shop, although she gets nervous in public, and she can only take in a few groceries at a time because of neck pain; take care of her two children, play with them, and help them

with homework; and, while her children take up most of her time, she is able to read the newspaper daily (and remember the content) and watch television.  *Id*. at 18, 142, 156-58, 162-63, 165-66.  However, at the time of the hearing, the ALJ noted that Plaintiff's allegations were much more "dramatic."  *Id*. at 19.  Plaintiff testified that she "has hallucinations, hears things, sleeps too much, is easily irritated, and has suicidal and homicidal thoughts.  She claimed that she threatens to kill her husband."  Further, she claimed to have difficulty focusing and staying on task, cycles between manic and depressive states on a daily basis, has chronic shoulder and neck pain, and she does not leave the house because she gets nervous in public.  *Id*. at 19, 36-37, 39, 41, 50-52, 54.

In addition to Plaintiff's inconsistent testimony, the ALJ considered the medical evidence of record.  While the ALJ recognized the severity  of Plaintiff's psychiatric impairments, as discussed above[2], Plaintiff's psychiatric records do not support the severity of Plaintiff's testimony at the hearing.   The ALJ also considered the medical evidence concerning Plaintiff's physical complaints.  While Plaintiff often complained of neck and

---

[2]*See supra*, pp. 13-17

arm pain, medical imaging and physical testing showed almost nothing of any significance.   (Tr. at 21-22.)   Further, not only has Plaintiff not undergone any corrective surgery for back or arm pain, none has been recommended.  Finally, Plaintiff testified that she is capable of performing household chores and caring for her children.  This further corroborates the ALJ's finding that Plaintiff is not credible.

IV.    Conclusion.[3]

Because the Court finds that the Commissioner's final decision applies

---

[3]

On November 18, 2010, Plaintiff filed a motion to remand pursuant to sentence 6 of 42 U.S.C. § 405(g) based on a notice of award resulting from a subsequent favorable decision.  (Doc. 12).  Plaintiff contends that the notice of award dated January 12, 2010, is new, non-cumulative, and material evidence; there was good cause for failing to submit it at the administrative level; and it is likely to lead to a change of the ALJ's decision.  *Id*. (*See Caulder v. Brown*, 791 F.2d 872, 877 (11th Cir. at 1986)).

However, the notice of award is not material because it could not reasonably have been expected to change the ALJ's decision.  The notice of award found Plaintiff to be disabled beginning June 22, 2009.  (Doc. 12 at 4.)   In the present case, the ALJ determined Plaintiff was not disabled through June 15, 2009.  (Tr. at 25.)  The notice of award to which Plaintiff refers is in reference to an application filed subsequent to the ALJ's decision in the present case and relates to a different time period altogether.  Thus, it is not material, nor could it have changed the ALJ's decision.  Therefore, Plaintiff has not met the requirements of remand under sentence six of 42 U.S.C. § 405(g) and Plaintiff's motion (Doc. 12) is denied.

the proper legal standards and is supported by substantial evidence, the

decision of the Commissioner will be affirmed by separate order.

Additionally, the Court denies Plaintiff's motion to remand pursuant to

Sentence 6 (Doc. 12).

Done this 29<u>th</u> day of <u>March 2011</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671
